RECEIVED
JAN - 7 2009
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DANIEL HUGHES, ET AL. | CIVIL ACTION NO. 06-1894 |
| VERSUS | JUDGE DOHERTY |
| POGO PRODUCING COMPANY, ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is the Motion for Summary Judgment filed by defendant Discovery Producer Services, L.L.C. ("Discovery") [Doc. 78]. Discovery seeks summary judgment on grounds it did not owe a duty to the plaintiff to equip the bunk bed from which plaintiff fell on a fixed offshore platform with guard rails and the absence of guard rails did not create an unreasonable risk of harm. The motion is opposed by plaintiffs Daniel Hughes and Laurie Ann Hughes, individually and on behalf of Samantha Hughes, Derrian Hughes, and Alysia Hughes [Doc. 89]. Intervenor Wood Group Production Services ("Wood Group"), which has or will shortly assume the defense of Pogo Producing Company, the operator of the platform, also filed an opposition brief [Doc. 84].

For the following reasons, Discovery's motion for summary judgment is DENIED.

### I.    Factual and Procedural Background

The parties agree on the factual scenario which places this matter before the Court. In January 2006, plaintiff Daniel Hughes was employed by Wood Group as a field superintendent assigned to work on the fixed platform rig, Grand Isle 115, which was owned by Discovery and which was located on the Outer Continental Shelf off the coast of Louisiana. On January 2, 2006, Hughes was attempting to climb down out of the top bunk bed in the living quarters of the platform.

As Mr. Hughes was descending from the top bunk, he missed a step and fell backwards onto a bench located in the middle of the bunkroom. Mr. Hughes alleges he sustained severe injuries as a result of the fall and subsequently filed the instant lawsuit seeking recovery for his injuries. In addition to Discovery and other parties, Mr. Hughes sued Pogo Producing Company, the operator of the platform, L.L.C. Mr. Hughes's wife, Laurie Ann Hughes, has asserted a claim for loss of consortium on her own behalf and on behalf of her children with Mr. Hughes.

Plaintiffs allege their claims against Discovery arise under the Outer Continental Shelf Lands Act, 43 U.S.C. §1331, *et seq.* Plaintiffs allege the following specific claims of negligence against Discovery:

a. Designing and maintaining a defective bunk bed in said living quarters;
b. Owning, maintaining, and providing defectively designed bunk bed in said living quarters;
c. Failing to take proper steps to insure that the living quarters including the bunk bed were free of any vices or defects;
d. Failing to provide a safe place to live and work on said platform;
e. Failing to exercise reasonable care to prevent injury caused by a defective thing in its custody.[1]

Plaintiffs' theory of liability appears grounded in their allegation the bunk bed from which Mr. Hughes fell was defectively designed for two reasons – it was not equipped with a hand rail or guard rail to serve as a grab point to assist in ascending and descending the ladder, and the ladder rungs were improperly spaced.

Discovery filed the instant motion for summary judgment on grounds it owed no duty to

---

[1] Although in the original complaint, these claims of negligence are alleged against defendants Pogo and Walter Oil & Gas Corp., Discovery was added as a party defendant in plaintiff's First Supplemental and Amending Complaint, and plaintiff's negligence claims are asserted against Discovery in that pleading and successive pleadings.

equip the bunk bed with a guard rail, and pursuant to Article 2317.1 of the Louisiana Civil Code, it cannot be liable for Mr. Hughes's injuries, all as more fully discussed below. In its motion, Discovery does not address the issue of whether the spacing of the ladder rungs was improper.

## II. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> . . . .
>
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III. Law and Analysis

In its motion for summary judgment, Discovery argues it is entitled to "summary judgment" *without delineating the specific claims for which it seeks dismissal*; presumably from the arguments made, it seeks dismissal of *all* claims brought by plaintiffs.

Discovery alleges plaintiffs' negligence claims against it as platform owner are governed by Louisiana law pursuant to OCSLA, 43 U.S.C. §1331, *et seq.* "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations. "Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'" *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003)(citations omitted); *see also* 43 U.S.C. § 1333(a)(2)(A). In its motion for summary judgment, Discovery contends Article 2317.1 is the governing Louisiana Civil Code article, because Discovery is being sued as a premises owner for a defective thing located on the premises. Although plaintiffs does not specifically allege Discovery's liability under Article 2317.1 in any of their complaints, plaintiffs do not dispute Article 2317.1 is the applicable law governing their claims against Discovery.

Article 2317.1 provides the owner or custodian of a thing is answerable for damages occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.[2] This article interjects the requirement of knowledge and reasonable care and in so doing effectively turns what was strict liability into negligence. *See Reitzell v. Pecanland Mall Associates, Ltd.*, 852 So.2d 1229, 1232 (La.App. 2nd Cir. 2003), *citing Solito v. Horseshoe Entertainment*, 834 So.2d 610 (La.App. 2nd Cir. 2002). Consequently, Article 2317.1 actions require proof that the defendant had custody of the thing causing the injury, that the thing contained a defect, ruin or vice, this is, a condition creating an unreasonable risk of harm, and that the defective condition caused plaintiff's injury. *Reitzell*, 852 So.2d at 1232, *citing Davis v. Diamond Shamrock Refining and Marketing Co.*, 774 So.2d 1076 (La.App. 2nd Cir. 2000).

There is no fixed rule for determining whether a thing presents an unreasonable risk of harm. The trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligation, the social utility, and the cost and feasibility of repair. "Simply put: The trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others." *Reitzell*, 852 So.2d at 1232, *citing Reed v. Wal-Mart Stores, Inc.*, 708 So.2d 362

---

[2] Article 2317.1 states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. C. Art. 2317.1.

(La. 1998). The concept of whether a defect presents an unreasonable risk of harm, which requires a balancing of the risk and utility of the condition, is not a simple rule of law which can be applied mechanically to the facts of the case. *Reitzell*, 852 So.2d at 1232, *citing Solito, supra.*

The degree to which a danger is evident to a potential victim is one factor in determining whether the condition is unreasonably dangerous. *Reitzell*, 852 So.2d at 1232, citing *Joseph v. City of New Orleans*, 842 So.2d 420 (La.App. 4th Cir. 2003); *Williams v. City of Baton Rouge*, 844 So.2d 360 (La.App. 1st Cir. 2003; *Shavers v. City of Baton Rouge*, 807 So.2d 883 (La.App. 1st Cir. 2001). The accident history of the defect is also a relevant consideration in the unreasonable risk evaluation. *See Reed, supra; Boyle v. Board of Sup'rs, Louisiana State University*, 685 So.2d 1080 (La. 1997).

Although not fully briefed or explained in Discovery's motion,[3] Louisiana jurisprudence makes clear that Article 2317.1's "[k]new or, in the exercise of reasonable care, should have known" language signifies "duty" in the negligence context. As the Louisiana Third Circuit Court of Appeals observed in *Myers v. Dronet*:

> In *Dobson v. Louisiana Power & Light Co.* [567 So.2d 569, 574 (La.1990)], our Louisiana Supreme Court defined negligence as "conduct which falls below the standard established by law for protection of others against an unreasonable risk of harm." Article 2317.1 establishes the legal standard to which *Dobson* referred when requiring that a plaintiff show that the defendant "knew or, in the exercise of reasonable care, should have known" of the ruin, vice, or defect which caused the damage; that the damage could have been prevented by the exercise of reasonable care; and that he failed to exercise such reasonable care.
>
> *In effect, a close reading of Article 2317.1 reveals that it imposes a two-prong duty upon the owner or custodian of a thing - a duty to identify the risks which the thing*

---

[3] The parties are cautioned that all applicable and governing law must be contained in the briefs addressing the issues before the Court. For example, in its motion for summary judgment, Discovery states Article 2317.1 governs the issues before this Court, then cites to a Louisiana Supreme Court case that applies the duty-risk analysis under Article 2315, then argues the duty element of the traditional duty-risk analysis without regard to Article 2317.1, then switches back to the "knowledge/notice" elements of the Article 2317.1 analysis. Nowhere in Discovery's brief is there a discussion concerning the interplay of the traditional duty-risk analysis with an analysis under Article 2317.1 – a discussion that was provided by this Court after its own research.

*caused and a duty to exercise reasonable care in preventing damages.*

801 So. 2d 1097, 1108 (La. App. 3rd Cir. 2001). *See also Melton v. Smith*, 940 So.2d 89, 93-94 (La.App. 2nd Cir. 2006) ("The notice and knowledge component of Article 2317.1, which changed the former strict liability standard for custodians to that of negligence, is the key. This notice or knowledge of the defect now creates a negligence duty to protect guests on the leased premises from known defects which is uniformly applicable to both lessor and lessee alike.").

Specifically, Discovery argues it owed no *duty* to equip the bunk beds on the platform with guard rails *and* the absence of guard rails did not create an unreasonable risk of harm. Therefore, Discovery contends plaintiffs are not entitled to recovery from Discovery for Mr. Hughes's injuries, because Discovery was not negligent. Discovery relies on an unpublished district court decision from Judge Hunter of this district, *Kennedy v. Mesa*, 1998 WL 182670 (W.D. La. 1998), in support of its position.[4]

The pivotal issue in both the *Kennedy* case and the instant case is whether the defendant had

---

[4] This Court notes the *Kennedy* decision, an unpublished decision, is not binding on this Court. However, the Court briefly notes the case given its similar factual scenario. In *Kennedy*, the plaintiff sued to recover for his injuries after he fell from an upper bunk bed on which there were no guard rails. The defendant in *Kennedy* argued, "For this court to deny the instant Motion is automatically to expose any person or institution who owns one of the thousands, if not millions, of un-railed bunks in this country, to the whim of a particular jury." The Court observed:

> We appreciate this candid observation. We certainly agree that such decision should best be made by legislative or regulation authority. No such authority exists. The central issue is whether or not Mesa provided adequate guard rails on plaintiff's bed. We are certainly not prepared to state that a bunk bed without a guard rail is a dangerous instrumentality in and of itself.

*Kennedy*, 1998 WL 182670, 1 (W.D. La. 1998). Applying Article 2315 of the Louisiana Civil Code – rather than Article 2317.1 – the court found bunk bends offshore typically do not have guard rails; the alleged accident took place on a fixed platform; the plaintiff chose his bunk in the living quarters and did not request a bottom bunk, or report a need for a rail or other protection from the risk of falling from bed; and the plaintiff had never before fallen from any bed, had never known of anyone to fall from a bunk bed offshore, and had never seen an offshore location with rails on the bunks. Additionally, the defendant's supervisor who had worked on and around offshore platforms testified that in 36 years, he had never seen or heard of bed rails employed on bunks. Finding that the defendant was not an insurer of the plaintiff's safety, the court concluded the platform owner did not have a duty to install a guard rail on the plaintiff's bunk bed and, consequently, granted defendant's motion for summary judgment.

a duty to install guard rails on bunk beds on the fixed offshore platforms in question.[5] Although the parties brief this issue substantively in connection with the instant motion for summary judgment, plaintiffs and Wood Group contend summary judgment is inappropriate at this time, as the issue and extent of Discovery's custody/control over the living quarters on the platform is a contested factual issue, and because discovery is ongoing with regard to this issue.

The Court agrees, the motion should not, at this juncture prevail, but notes the parties have incorrectly framed the issue. The issue is not one of "custody or control" over the living quarters. Rather, the issue is whether Discovery had a *legal duty* to install guard rails and/or ladders with properly-spaced rungs, the latter being totally ignored by Discovery in its motion for summary judgment. Vital to this Court's determination of whether such a duty was owed is evidence of what Discovery – as the owner of the platform – knew or should have known about the condition of the bunk beds in the living quarters and the alleged risk of harm presented by the bunk beds, in the context and condition which existed. Plaintiffs argue Discovery knew or should have known the bunk beds were defective, because when Discovery representatives visited the platform, they would stay in the living quarters. Discovery, on the other hand, argues Pogo, the operator of the platform – and the party responsible for compliance with safety regulations – never reported to Discovery that the bunk beds were defective. Wood Group – which has assumed or will shortly assume the defense of Pogo – filed an opposition brief arguing Discovery has not offered any evidence that it was *not* responsible for the living quarters. All parties beg the question upon which a legal duty under Louisiana Civil Code Article 2317.1 might flow *under the circumstances at issue in this case.*

---

[5] The issue of whether the ladder itself was defective – and, therefore, whether Discovery owed plaintiff a duty in connection with the ladder itself – is also an outstanding issue in this case, but is not raised in Discovery's motion.

Clearly, the issue of what Discovery knew or did not know as to what if any risk existed, given the history of the beds on this particular rig, has not been addressed beyond the conclusory. What Pogo or Discovery knew or should have known about the history and condition of the bunk beds is hotly contested and is an issue for which discovery remains outstanding.

The issue of knowledge and/or notice and the existence of or lack of any history to support the argument of defect is currently being explored by the parties and is in dispute and subject to ongoing discovery. Consequently, this Court cannot determine whether Discovery owed Mr. Hughes a legal duty to install guard rails or ladders with properly-spaced rungs on the bunk beds in question *in this particular circumstance.* Until discovery is complete, this Court cannot make the legal determination as to (1) *what* legal duty was owed to Mr. Hughes regarding the bunk beds, and (2) *which* party owed that duty to Mr. Hughes. Accordingly, summary judgment is inappropriate at this time.

Considering the foregoing,

IT IS ORDERED that Discovery's motion for summary judgment requesting this Court dismiss plaintiffs' claims against Discovery is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 7th day of January, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE