RECEIVED
FEB 1 2 2009
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DANIEL HUGHES, ET AL. | CIVIL ACTION NO. 06-1894 |
| VERSUS | JUDGE DOHERTY |
| POGO PRODUCING COMPANY, ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is the Motion for Summary Judgment filed by defendants ENI Petroleum US LLC[1] and ENI US Operating Co. Inc. (hereinafter collectively referred to as "ENI"), as successor-in-interest to British Borneo USA, Inc. ("British Borneo") [Doc. 100]. In its motion, the ENI entities move this Court "for summary judgment regarding the claims of plaintiffs . . . declaring that there is no genuine issue of material fact that at the time of the accident made the subject of this litigation:" (1) ENI was not a "manufacturer" of the bunk bed from which Mr. Hughes allegedly fell or of the living quarters of the platform under the Louisiana Products Liability Act ("LPLA") at the time of the accident that is the subject of this litigation; (2) ENI did not own or control the platform at issue, therefore, plaintiffs' claim against ENI for premises liability must fail; and (3) ENI did not owe a duty to plaintiff to equip the bunk bed with handrails or a guardrail. In its memorandum in support of its motion for summary judgment, ENI advances the following additional arguments: (4) Plaintiffs' claims against ENI have prescribed; (5) a fixed platform is not a "product" under the LPLA; and (4) neither the bunk bed in question nor the living quarters were "unreasonably dangerous."

---

[1] ENI Petroleum US LLC alleges it was erroneously named as "ENI US Operating Co, Inc." in the complaint.

Both plaintiffs and Pogo Producing Company ("Pogo") have filed opposition briefs [Docs 125 & 110]. For the following reasons, ENI's motion is GRANTED IN PART and DENIED IN PART.

I. **Factual and Procedural Background**

The parties agree on the factual scenario which places this matter before the Court. In January 2006, plaintiff Daniel Hughes was employed by Wood Group as a field superintendent assigned to work on the fixed platform rig, Grand Isle 115, which was owned by Discovery Producing Services, L.L.C. ("Discovery") and which was located on the Outer Continental Shelf off the coast of Louisiana. On January 2, 2006, Mr. Hughes was attempting to climb down out of the top bunk bed in the living quarters of the platform. As Mr. Hughes was descending from the top bunk, he missed a step and fell backwards onto a bench located in the middle of the bunkroom. Mr. Hughes alleges he sustained severe injuries as a result of the fall and subsequently filed the instant lawsuit seeking recovery for his injuries. Mr. Hughes's wife filed a claim for loss of consortium on behalf of herself and the couples' minor children

In addition to Discovery, plaintiffs sued several additional entities, including Pogo Producing Company, the alleged operator of the platform; Atlantia Corporation, one of the companies that allegedly manufactured the platform, including the living quarters; and ENI, the company that succeeded British Borneo, the company that allegedly "ordered" the platform and – according to plaintiffs – exercised a degree of control over the design and construction of the platform and its living quarters such that plaintiffs allege ENI, as successor to British Borneo, should also be deemed a "manufacturer" of the platform under the LPLA.

ENI was brought into the suit by way of a Second Supplemental and Amending Complaint

filed on January 15, 2008, which was filed more than two years after the alleged accident. Plaintiffs filed a Third Supplemental and Amending Complaint on June 17, 2008 [Doc. 73], and a Fourth Supplemental and Amending Complaint on December 16, 2008 [Doc. 93], in which plaintiffs also added ENI Petroleum US L.L.C. as a defendant. In the Fourth Supplement and Amending Complaint, plaintiffs allege the following claims against the ENI entities:

8.

This incident was not due to any negligence on the part of Mr. Hughes but rather was caused by the negligence and/or fault of Pogo, Discovery Producer Services, LLC, British Borneo/Eni, Atlantia Offshore, Ltd. and/or Atlantia Corporation in the following non-exclusive particulars, among others to be more fully shown at the trial of this matter, to-wit:

- a. Designing, constructing, manufacturing, refurbishing, and/or maintaining a defective bunk bed in the living quarters aboard the platform Grand Isle 115;

- b. Owning, maintaining, and providing defectively designed bunk bed in said living quarters aboard the platform Grand Isle 115;

- c. Failing to take proper steps to insure that the living quarters including the bunk beds were free of any vices or defects;

- d. Failing to provide a safe place to live and work on the platform Grand Isle 115; and

- e. Failing to exercise reasonable care to prevent injury caused by a defective thing in its custody."[2]

To be technical, in the actual motion for summary judgment itself, ENI moves for summary judgment on only three grounds: (1) ENI was not a "manufacturer" of the bunk bed from which Mr. Hughes allegedly fell or of the living quarters of the platform under the Louisiana Products Liability

---

[2] *See* Plaintiff's Fourth Supplemental and Amending Complaint, Doc. 93, at ¶8.

Act ("LPLA") at the time of the accident that is the subject of this litigation; (2) ENI did not own or control the platform at issue, therefore, plaintiffs' claim against ENI for premises liability must fail; and (3) ENI did not owe a duty to plaintiff to equip the bunk bed with handrails or a guardrail. ENI also advances several other arguments in its memorandum in support of its motion, each of which this Court will briefly address, as follows: (4) Plaintiffs' claims against ENI have prescribed; (5) ENI can have no liability under the LPLA because a fixed platform is not a "product" under the LPLA; and (6) the bunk bed in question was not "unreasonably dangerous."

## II. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues

on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III. Law and Analysis

Federal jurisdiction in this matter is based on the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq*. "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations. "Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'" Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003)(citations omitted); *see also* 43 U.S.C. § 1333(a)(2)(A).

#### 1. Prescription

Although not raised as a ground for summary judgment, the Court will address the

prescription issue first, as it is largely a procedural matter. This Court notes it cannot determine at this time whether the plaintiffs' claims against ENI are prescribed. Article 2324(C) of the Louisiana Civil Code states interruption of prescription against one tortfeasor is effective against all joint tortfeasors.[3] The liability of the timely-sued defendants in this matter – Pogo and Discovery – has not been determined by this Court and must be determined either by way of motion prior to trial or at trial. Furthermore, for the reasons stated hereinafter, this Court finds ENI's liability in this case – at least with respect to certain of the plaintiffs' claims – cannot be determined in a summary fashion. Therefore, should Pogo or Discovery ultimately be found liable for Mr. Hughes's injuries, the timely filing of suit against either of those entities will be deemed to have interrupted the prescriptive period against ENI, a potential joint tortfeasor. Thus, the filing of suit against ENI could, potentially, be timely. It would, therefore, be inappropriate for this Court to dismiss the plaintiffs' claims against ENI as prescribed at this time.

Considering the foregoing, IT IS ORDERED that ENI's request for relief on grounds plaintiffs' claims against it have prescribed is DENIED.

2. **The Summary Judgment Issues**

    a. **Is ENI a "Manufacturer" under the LPLA?**

ENI seeks summary judgment on grounds it cannot be liable under the LPLA because it was not a "manufacturer" of either the bunk bed or the living quarters in question.

La. Rev. Stat. 9:2800.53 defines a "manufacturer" under the LPLA as follows:

(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means

---

[3] Article 2324(C) states: "Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." La. Civ. Code art. 2324(C).

producing, making, fabricating, *constructing, designing,* **remanufacturing,** *reconditioning or refurbishing a product....*

La. Rev. Stat. §9:2800.53 (West 2009) (emphasis added).

In response, both plaintiffs and Pogo argue that whether, and to what extent, control over the design of the bunk bed and the living quarters of the platform was exercised by British Borneo/ENI are questions of fact that are hotly disputed. Plaintiffs and Pogo further offer evidence supporting their contention that ENI/British Borneo participated in the design and construction process of the bunk beds and the living quarters of the platform in this case in a such a manner that ENI should be considered a manufacturer of both the bunk bed and the living quarters under the LPLA. Considering the burden of production associated with summary judgment motions, the legal presumptions which attach to evidence produced by a non-movant, and the prohibition against weighing evidence in this context, this Court finds the evidence set forth by plaintiffs and Pogo concerning the following alleged facts suffices to demonstrate the existence of a genuine issue of material fact as whether ENI may be characterized as a "manufacturer" under the LPLA:

- the corporate representative for Atlantia Corporation, Steve Kibbee, testified the design of the platform required British Borneo's (as the successor-in-interest to ENI) approval

- Steve Kibbee had a counterpart at British Borneo, project manager Ross Frazier, with whom he worked extensively on the Grand Isle 115 project

- British Borneo received periodic progress reports regarding the platform and would call and ask questions about "any number of things"

- British Borneo's list of requirements for the platform would change as the circumstances of the project changed

- the relationship between British Borneo and Atlantia Corporation could be characterized as a "joint participation" with regard to the requirements of Grand Isle 115, and that those requirements included the living quarters

- British Borneo clearly approved design aspects of the platform and made changes to the design, the effects of which Atlantia documented on its spreadsheets

- British Borneo regularly received design requirement lists from Atlantia, which needed British Borneo's review and approval

- In addition to Ross Frazier, British Borneo's Dr. Will Roach also participated in the construction of Grand Isle 115, and spoke to Steve Kibbee on a daily basis

- Dr. Roach was mainly involved in safety issues

- It was Dr. Roach's idea to conduct safety review studies, known as "hazop" and "hazid" studies, to look at "all possible safety issues" and selecting a third party to conduct these studies was a joint selection between British Borneo and Atlantia

- By contrast, ENI's corporate representative, Ralph Watson, could not testify with any certainty regarding the extent of ENI's involvement in the platform design/manufacture. Mr. Watson admitted that British Borneo had a project team working internally on the project, which included Will Roach and Ross Frazier, and agreed with the assessment that British Borneo carefully reviewed quality control requirements and that these were essential parts of the design and manufacturing process.

Considering the foregoing, this Court concludes there are genuine issues of material fact regarding whether ENI exerted such control over the design and construction of the bunk beds and the living quarters of the platform such that ENI should be deemed a "manufacturer" of same under the LPLA. Consequently, ENI's motion for summary judgment on grounds it is not a manufacturer under the LPLA is DENIED.

### b. Did ENI Owe Mr. Hughes a Duty?

ENI contends it owed Mr. Hughes no duty to provide him with a bunk bed equipped with handrails or a guardrail and plaintiffs "cannot establish a prima facie case of negligence against ENI under any theory of Louisiana law, because ENI owed no duty to this plaintiff for this injury . . ."

This Court has already concluded there are genuine issues of material fact regarding whether

ENI is a manufacturer under the LPLA. Furthermore, the LPLA contains an exclusive remedy provision, as follows:

> This Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter. *Conduct or circumstances that result in liability under this Chapter are "fault" within the meaning of Civil Code Article 2315.*

La. Rev. Stat. §9:2800.52 (West 2009) (emphasis added). *See also Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261-62 (5th Cir. 2002) ("[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in" the LPLA.). Thus, the foregoing provision limits a plaintiff's theories of recovery against a manufacturer of an allegedly defective product to those established by the LPLA.

If this Court determines ENI is a manufacturer under the LPLA, plaintiffs' remedy against ENI will be exclusive under the LPLA. Pursuant to the express language of the LPLA, *fault* will be determined *"within the meaning of Civil Code Article 2315,"* which will involve a *duty-risk analysis*. The duty-risk analysis will, of course, require this Court to determine whether ENI owed Mr. Hughes a duty to provide a bunk bed that contained handrails or a guardrail. Therefore, as this Court has not yet determined whether ENI is a manufacturer under the LPLA, it cannot conclude as a matter of law that ENI owed no duty to Mr. Hughes to provide a bunk bed with no handrails or guardrail.

To the extent ENI's argument focuses on the duty element under Article 2315 *per se*, if this Court concludes ENI is *not* a manufacturer under the LPLA, plaintiffs will not have an exclusive remedy under the LPLA and may, potentially, have a negligence claim and remedy against ENI under Louisiana law. A negligence claim will also require this Court to analyze whether ENI owed Mr. Hughes a duty. Therefore, under either scenario, there are genuine issues of material fact regarding

whether ENI owed a duty to provide Mr. Hughes with a bunk bed containing either handrails or a guardrail.

Considering the foregoing, ENI's motion for summary judgment on grounds it owed Mr. Hughes no duty to provide him with a bunk bed equipped with handrails or a guardrail is DENIED.

### c. Premises Liability Claim

Plaintiffs allege a claim against ENI for "[o]wning, maintaining, and providing [a] defectively designed bunk bed in said living quarters aboard the platform Grand Isle 115[.]" To the extent plaintiffs are suing ENI for owning a defective premises, the claim is governed by Articles 2317.1 and 2322 of the Louisiana Civil Code.[4]

---

[4] Article 2317.1 states:

> The *owner or custodian* of a thing is answerable for damage occasioned by its ruin, vice, or defect, *only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.*

La. Civ. Code art. 2317.1 (West 2009) (emphasis added).

Article 2322 states:

> *The owner of a building* is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. Code art. 2322 (West 2009) (emphasis added).

The Court notes strict liability as argued by the plaintiff did not survive the 1996 amendments to the Louisiana Civil Code. Thus, Article 2317.1 infuses "actual or constructive knowledge" and traditional negligence terminology - "reasonable care"- into Article 2317. The result is that most Louisiana courts have determined that "[t]he addition of knowledge as an element has effectively terminated strict liability in most circumstances." *See, e.g., Lasyone v. Kansas City Southern R.R.*, 786 So.2d 682, 689 (La. 2001) (applying Article 2317 as it existed pre-1996 amendment, but nevertheless citing Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law, §14-2, at

-11-

In the instant motion, ENI argues plaintiffs cannot prove the essential element of "custody" under the foregoing articles, because ENI did not own the platform on January 2, 2006, the date of the plaintiff's alleged accident. Indeed, from the briefs filed by the parties, it appears Dynamic owned the platform at the time of plaintiff's injury. Plaintiffs do not oppose this portion of ENI's motion.

Considering the foregoing, there is no genuine issue of material fact that at the time of the Mr. Hughes's injury, ENI did not own the platform in question, and cannot be liable to plaintiffs pursuant to Articles 2317.1 and 2322 of the Louisiana Civil Code. Considering the foregoing, ENI's motion for summary judgment seeking dismissal of plaintiff's premises liability claim – which is not opposed by plaintiffs – is GRANTED, and plaintiffs' premises liability claim against ENI is DENIED AND DISMISSED WITH PREJUDICE.

### 3. ENI's Remaining Arguments

#### a. Applicability of LPLA to a "Platform"

In its complaint, plaintiffs allege ENI is liable for "owning, maintaining and providing [a] defectively designed bunk bed in said living quarters aboard platform Grand Isle 115."[5] In its motion for summary judgment, ENI states it "anticipates that the plaintiff will argue against this motion by characterizing ENI as a manufacturer *of the platform*," noting ENI contracted with Atlantia for construction of the platform. ENI contends the LPLA only covers "products," and that a platform

---

330-32 (1996), and noting "[b]y requiring knowledge or constructive knowledge under Article 2317.1, the Legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim"); *Wiley v. Sanders*, 796 So.2d 51, 54(La. App. 2nd Cir. 2001) ("The addition of knowledge as an element has effectively eliminated strict liability in most circumstances."); *Myers v. Dronet*, 801 So.2d 1097, 1105-06 (La. App. 3rd Cir. 2001) (accord); *Greenhouse v. C.F. Kenner Assoc. Ltd. Partnership*, (La. App. 4th Cir. 1998) (accord); *Trice v. Isaac*, 759 So.2d 843, 846 (La. App. 5th Cir. 2000) (accord).

[5] *See* Plaintiff's Fourth Supplemental and Amending Complaint, Doc. 93, at ¶8.

– which, under Louisiana law is characterized as a building[6] -- cannot be considered a "product" under the LPLA.

A "product" is defined under the LPLA as follows:

(3) "Product" means a corporeal movable that is manufactured for placement into trade or commerce, *including a product that forms a component part of or that is subsequently incorporated into another product or an immovable.* "Product" does not mean human blood, blood components, human organs, human tissue or approved animal tissue to the extent such are governed by R.S. 9:2797.

La. Rev. Stat. §9:2800.53(3) (West 2009) (emphasis added).

This Court concludes ENI's focus on the "platform" as the product in question is misplaced. In their complaint, plaintiffs also allege ENI was negligent in "designing, constructing, manufacturing, refurbishing, and/or maintaining *a defective bunk bed* in the living quarters aboard the platform Grand Isle 115[.]"[7] Therefore, plaintiffs contend it was the *bunk beds* in the living quarters that were unreasonably dangerous – *not the platform itself* – that caused Mr. Hughes's injuries. Although this Court believes the bunk beds would appear to be corporeal movables prior to their incorporation into the platform, as that term is defined in Section 9:2800.53 of the LPLA, neither party has provided this Court with jurisprudence addressing this precise issue. Furthermore, it is unclear whether the living quarters, as opposed to the platform itself, were separate pod like units designed and managed separately as certain argument suggests, or whether they were designed merely as part of the platform itself. Nonetheless, it would seem the argued defect is in the and of the **bunk beds** and not the nature or design of the living quarters, or the platform, themselves. As this Court does not have sufficient information, this Court concludes the parties have failed to carry

---

[6] *See Olsen v. Shell Oil Co.*, 365 So. 2d 1285, 1290 (La. 1978) (holding that a permanent structure, such as a fixed drilling platform, which has a permanent foundation in the soil, is a building). *See also Bruyninckx v. Bratten*, 554 So.2d 247, 248 (La. App. 3rd Cir. 1989) (a fixed drilling platform is a building).

[7] *See* Doc. 93 at ¶8.

their burden with respect to the issue regarding whether the LPLA applies to the bunk beds and/or living quarters and this Court concludes ENI is not entitled to relief with respect to this issue at this time.

### b. Was Bunk Bed/Living Quarters Unreasonably Dangerous?

ENI also argues it cannot be liable under the LPLA because plaintiffs cannot "maintain [their] burden of proving a likelihood of injury sufficient to warrant an alternate design of the bunk beds and/or living quarters under the LPLA."

A manufacturer is liable to a consumer under Louisiana law if (1) a condition of its product caused a harm to the consumer; (2) the condition made the product unreasonably dangerous to normal use; and (3) the condition existed at the time the product left the manufacturer's control. *Klem v. E.I. DuPont De Nemours & Co.*, 19 F.3d 997, 1000 (5th Cir. 1994), citing *Antley v. Yamaha Motor Corp.*, 539 So.2d 696, 699-700 (La. App. 3rd Cir.1989) and *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (La.1986). A product can be unreasonably dangerous in its construction or composition (La. Rev. Stat. §9:2800.55); in its design (La. Rev. Stat. §9:2800.56); because an adequate warning about the product has not been provided (La. Rev. Stat. §9:2800.57); or because it does not conform to an express warranty of the manufacturer (La. Rev. Stat. §9:2800.58). ENI argues even if this Court determines it was a manufacturer under the LPLA, it still cannot be liable under the LPLA, because the bunk bed in question was not unreasonably dangerous at the time of Mr. Hughes's alleged accident.[8]

Pursuant to the LPLA, a product is unreasonably dangerous in design if, "at the time the

---

[8] Although ENI contends the bunk beds and/or living quarters are also not unreasonably dangerous in construction or composition, plaintiffs do not argue this aspect of the LPLA, focusing instead on the design of the bunk beds and/or living quarters. Therefore, this Court does not address the construction and/or composition of the bunk beds and/or living quarters under the LPLA.

product left its manufacturer's control":

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La Rev. Stat. §9:2800.56 (West 2009). *See also Klem*, 19 F.3d at 1000-01.

In support of its argument that the bunk beds and/or living quarters were not unreasonably dangerous, ENI puts forth evidence showing Mr. Hughes testified he had used similar bunk beds throughout his 33 years of work on offshore platforms without incident; he had previously used the bunk beds on the Grand Isle 115 platform without incident; and he could not recall hearing of or reporting such an accident prior to his own alleged fall in 2006.

In response, plaintiffs submit the report of their expert, Dr. Robert Anders, who states there existed an alternative design for the bunk beds that was capable of preventing Mr. Hughes's injuries. In his report, Dr. Anders states by adding a single safety guard rail to the top bunk, Mr. Hughes's fall could have been prevented. Furthermore, plaintiffs contend the cost, or burden, of making such an addition would have been negligible when compared to the cost of the entire bunk bed and such an addition would not have an adverse effect on the utility of the bunk bed. Dr. Anders further states Mr. Hughes's fall could have been prevented if the bunk bed ladder conformed to known standards and industry practices for the design of fixed ladders. Plaintiffs allege there would not have been any increase in the cost of the bunk beds by providing a properly designed ladder, and properly spaced rungs on the bunk bed ladder would likely have increased the ladder's utility.

Considering plaintiffs have put forward evidence showing an alternative design for the

product that was capable of preventing the claimant's damage, this Court concludes plaintiffs have maintained their burden of production with respect to this issue. This conclusion is not altered by the district court's holding in *Kennedy v. Mesa*, 1998 WL 182670 (W.D. La. 1998) (J. Hunter), a case relied upon by ENI in its motion. First, this Court is not bound by the decisions of other district courts in this circuit. Second, although this Court acknowledges the court in *Kennedy* found the bunk bed in that case was not unreasonably dangerous because it did not have a guardrail *as a matter of law*, this Court notes the factual circumstances in *Kennedy* are somewhat different from the facts of the instant case. In *Kennedy*, plaintiff offered the opinion of an expert who apparently submitted nothing more than a conclusory opinion that "people can get hurt falling out of bed" and "companies who own beds have a duty to provide bed rails." *Kennedy*, 1998 WL 182670 at *2. There is no indication the expert in *Kennedy* submitted any opinion regarding alternative design theories. In the instant case, plaintiffs' expert has opined there existed an alternative design for the bunk bed in question; the alternative design would have been negligible in cost when compared to the cost of the entire bunk bed, and the addition of the guardrail would have had no adverse effect on the utility of the entire bunk bed. Under Section 9:2800.56 of the LPLA, this Court concludes the plaintiffs have satisfied their burden of production to survive the instant motion, however this Court makes no finding as to the merits of the claim.

Considering the foregoing, ENI's request for relief on this issue is DENIED.

## IV. Conclusion

For the foregoing reasons,

IT IS ORDERED that ENI's request for relief on grounds plaintiffs' claims against it have prescribed is DENIED.

IT IS FURTHER ORDERED that there are genuine issues of material fact regarding whether ENI exerted such control over the design and construction of the bunk beds and the living quarters of the platform such that ENI should be deemed a "manufacturer" of same under the LPLA. Therefore, IT IS ORDERED that ENI's motion for summary judgment on grounds it is not a manufacturer under the LPLA is DENIED.

IT IS FURTHER ORDER that ENI's motion for summary judgment on grounds it owed Mr. Hughes no duty to provide him with a bunk bed equipped with handrails or a guardrail is DENIED.

IT IS FURTHER ORDERED that ENI's motion for summary judgment seeking dismissal of plaintiff's premises liability claim – which is not opposed by plaintiffs – is GRANTED, and plaintiffs' premises liability claim against ENI is DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the parties have failed to carry their burden with respect to the issue regarding whether the LPLA applies to the bunk beds and/or living quarters and IT IS ORDERED that ENI is not entitled to relief with respect to this issue at this time.

IT IS FURTHER ORDERED that plaintiffs have satisfied their burden of production with respect to the issue of whether the bunk bed and/or living quarters were unreasonably dangerous at the time of Mr. Hughes's accident, and ENI's request for relief with respect to this issue is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 12 day of February 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE