RECEIVED
FEB 20 2009
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DANIEL HUGHES, ET AL. | CIVIL ACTION NO. 06-1894 |
| VERSUS | JUDGE DOHERTY |
| POGO PRODUCING COMPANY, ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is the Motion for Summary Judgment filed by defendant Pogo Producing Co. ("Pogo") [Doc. 112] and the Motion for Oral Argument filed by Pogo [Doc. 113]. In its motion, Pogo "moves this Court to grant its Motion for Summary Judgment and dismiss all of the plaintiffs' claims against it, with prejudice" on grounds "Pogo was neither the manufacturer of the bunk bed/living quarters area where the plaintiff allegedly fell, nor did Pogo have actual or constructive knowledge of any alleged defects in the platform's bunkbed/living quarters, assuming any existed."

Plaintiffs Daniel and Laurie Ann Hughes, on behalf of themselves and their minor children, defendants ENI Petroleum US LLC and ENI US Operating Co. Inc. (hereinafter collectively referred to as "ENI"), and defendant Discovery Producer Services, L.L.C. (Discovery) have filed opposition briefs [Docs. 127, 128 & 129]. For the following reasons, Pogo's motion is GRANTED IN PART and DENIED IN PART. Pogo's Motion for Oral Argument [Doc. 113] is DENIED.

I.  **Factual and Procedural Background**

The general facts of this case have been set forth in previous rulings issued by this Court and will not be set forth again in this ruling. Only those facts not previously discussed and applicable

to Pogo's motion for summary judgment will be recited herein.

At the time of his injury, Hughes was employed by Wood Group Production Services ("Wood Group), a contract operator for Pogo. Pogo is the MMS operator of record for Grand Isle 115, the platform at issue in this case. Pogo leased space on the Discovery platform to situate a production module, which collected and processed production from blocks located miles away.

The "Agreement for the Operation and Maintenance of the Discovery Platform," entered into between Pogo and Discovery, states, in pertinent part:

> 3.2 <u>Operating Services to be Provided by Contractor.</u>
>
> *Contractor [Pogo] shall have charge of and shall operate, maintain and repair the Discovery platform [Grand Isle 115]* . . . with (i) policies and procedures consistent with industry standards and (ii) all applicable laws.[1]

In turn, Pogo contracted with several independent contractors, including Wood Group, whom Pogo contends "performed . . . actual operations or maintenance." The Master Service Agreement between Pogo and Wood Group is the customary master service agreement covering "any Work agreed to be performed by Contractor (Wood Group) for Company (Pogo). . ."[2] According to Pogo, Mr. Hughes – a production superintendent for Wood Group – was trained and schooled in safety, and took responsibility for inspection and providing safe working conditions aboard the platform. Plaintiffs do not dispute this fact, but argue Pogo, as the operator of record for the platform, bore the ultimate responsibility for providing a reasonably safe platform for all independent contractors working on the platform, including Mr. Hughes and Wood Group.

---

[1] See "Agreement for the Operation and Maintenance of the Discovery Platform," attached as Exhibit "A" to plaintiff's opposition brief, Doc. 129.

[2] *See* Master Service Agreement between Pogo and Wood Group, attached as Exhibit "C" to plaintiff's opposition brief, Doc. 129.

In their Fourth Supplement and Amending Complaint, plaintiffs allege the following claims against Pogo:

8.

This incident was not due to any negligence on the part of Mr. Hughes but rather was caused by the negligence and/or fault of Pogo, Discovery Producer Services, LLC, British Borneo/Eni, Atlantia Offshore, Ltd. and/or Atlantia Corporation in the following non-exclusive particulars, among others to be more fully shown at the trial of this matter, to-wit:

- a. Designing, constructing, manufacturing, refurbishing, and/or maintaining a defective bunk bed in the living quarters aboard the platform Grand Isle 115;

- b. Owning, maintaining, and providing defectively designed bunk bed in said living quarters aboard the platform Grand Isle 115;

- c. Failing to take proper steps to insure that the living quarters including the bunk beds were free of any vices or defects;

- d. Failing to provide a safe place to live and work on the platform Grand Isle 115; and

- e. Failing to exercise reasonable care to prevent injury caused by a defective thing in its custody."[3]

Pogo moves for summary judgment on three grounds: (1) Pogo is not a "manufacturer within the meaning of the Louisiana Products Liability Act ("LPLA") and, therefore, cannot be liable under the LPLA; (2) Pogo cannot be liable under a premises liability theory, as Pogo did not own the platform, nor did it have any actual or constructive knowledge of any alleged defects in the platform; and (3) Mr. Hughes's own negligence prevents or reduces his recovery.

---

[3] *See* Plaintiff's Fourth Supplemental and Amending Complaint, Doc. 93, at ¶8.

## II. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III. Law and Analysis

Federal jurisdiction in this matter is based on the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.* "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations. "Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'" Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003)(citations omitted); *see also* 43 U.S.C. § 1333(a)(2)(A).

### 1. Is Pogo a "Manufacturer" under the LPLA?

Pogo seeks summary judgment on grounds it cannot be liable under the LPLA because it was not a "manufacturer" of either the bunk bed from which Mr. Hughes fell or the living quarters in which the bunk bed was located.

La. Rev. Stat. 9:2800.53 defines a "manufacturer" under the LPLA as follows:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. . . .

La. Rev. Stat. §9:2800.53 (West 2009).

In its response brief, plaintiffs put forth no evidence showing Pogo was a manufacturer of either the bunk bed or the living quarters in question. In fact, plaintiffs do not address this portion of Pogo's motion in its opposition brief. Therefore, this portion of Pogo's motion is essentially unopposed.[4]

Considering the foregoing, there is no genuine issue of material fact that at the time of the Mr. Hughes's injury, Pogo was not a "manufacturer" of either the bunk bed or the living quarters in question and, therefore, cannot be liable to plaintiffs under the LPLA. Considering the foregoing, Pogo's motion for summary judgment seeking dismissal of plaintiffs' LPLA claim – which is not opposed by plaintiffs – is GRANTED, and plaintiffs' LPLA claim against Pogo is DENIED AND DISMISSED WITH PREJUDICE.

### 2. Premises Liability Claim

Plaintiffs allege a claim against Pogo for "[o]wning, maintaining, and providing [a] defectively designed bunk bed in said living quarters aboard the platform Grand Isle 115[.]" To the extent plaintiffs are suing Pogo for owning or being a custodian of a defective premises, the claim is governed by Articles 2317.1 and 2322 of the Louisiana Civil Code. The parties do not dispute this.

Article 2317.1 states:

> The *owner or custodian* of a thing is answerable for damage occasioned by its ruin, vice, or defect, *only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.*

---

[4] This Court notes that ENI and Discovery similarly do not address this portion of Pogo's motion in their opposition briefs.

La. Civ. Code art. 2317.1 (West 2009) (emphasis added).

Article 2322 states:

> ***The owner of a building*** is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. Code art. 2322 (West 2009) (emphasis added).

Article 2317.1 infuses "actual or constructive knowledge" and traditional negligence terminology - "reasonable care" - into Article 2317. The result is that most Louisiana courts have determined "[t]he addition of knowledge as an element has effectively terminated strict liability in most circumstances." *See, e.g., Lasyone v. Kansas City Southern R.R.*, 786 So.2d 682, 689 (La. 2001) (applying Article 2317 as it existed pre-1996 amendment, but nevertheless citing Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law, §14-2, at 330-32 (1996), and noting "[b]y requiring knowledge or constructive knowledge under Article 2317.1, the Legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim"); *Wiley v. Sanders*, 796 So.2d 51, 54 (La. App. 2nd Cir. 2001) ("The addition of knowledge as an element has effectively eliminated strict liability in most circumstances."); *Myers v. Dronet*, 801 So.2d 1097, 1105-06 (La. App. 3rd Cir. 2001) (accord); *Greenhouse v. C.F. Kenner Assoc. Ltd. Partnership*, (La. App. 4th Cir. 1998) (accord); *Trice v. Isaac*, 759 So.2d 843, 846 (La. App. 5th Cir. 2000) (accord).

Pogo argues it cannot be liable under a "premises liability" theory of liability because it was never the owner of the living quarters area of the platform where Mr. Hughes was injured (Discovery

was the owner). However, this Court notes to be liable under Article 2317.1, a party need not be an owner of the thing; it may also be a *custodian* of the thing. Thus, this Court must examine two issues to determine whether Pogo has potential liability under Article 2317.1: (1) was Pogo a "custodian" of the bunk bed/living quarters, and (2) did Pogo have knowledge – or should it have had knowledge – of the alleged defect in the bunk bed/living quarters?

### a. Was Pogo a "custodian" of the Bunk Bed/Living Quarters?

Pogo argues it was not a custodian of the bunk bed/living quarters, because it "delegated all operational responsibilities to contractors, through its representatives such as the plaintiff." Pogo further contends it did not have any employees on the platform who performed any actual operations or maintenance, but rather, hired contractors to perform these operations. Pogo contends these contractors worked under Master Service Agreements that do not allow Pogo to direct them; rather, these employees were given a general result to achieve without close supervision of the activities by Pogo. Specifically, Pogo contends it hired Mr. Hughes's employer – Wood Group – as contract operator aboard the platform, and Wood Group was responsible for maintaining the facility, which included safety compliance. Pogo argues Mr. Hughes supervised all employees on the platform as a production superintendent and was in the best position to report problems to Pogo.

The foregoing arguments of Pogo are drawn primarily from the testimony of former Pogo employees Guy Williams, who was a Senior Operations Manager, and Phil Drolla, who was a Production Superintendent.[5] In response, the plaintiffs have produced evidence showing the testimony of Mr. Williams and Mr. Drolla is directly contradicted by the "Agreement for the

---

[5] From the testimony of the witnesses, it appears Pogo is no longer in existence. The attorneys for the parties have not enlightened the Court as to Pogo's legal status at this time.

Operation and Maintenance of the Discovery Platform," entered into between Pogo and Discovery, which establishes Pogo as the *operator of record* for Grand Isle 115 at the time of Mr. Hughes's injury. The plaintiffs offer evidence showing that, as the operator of record for the platform, Pogo was ultimately responsible to ensure the platform was reasonably safe, notwithstanding Pogo's contractual relationship with Wood Group, and also offer evidence showing the Master Service Agreement between Wood Group and Pogo does not transfer Pogo's ultimate responsibility to keep the platform free from unsafe working conditions to Wood Group. Plaintiffs argue even Phil Drolla admitted the Minerals Management Service ("MMS") would ultimately look to Pogo, as operator of record, for safety, health and environmental compliance, notwithstanding Pogo's assertion it delegated responsibility for the condition of the platform to Wood Group, as follows:

> A [Phil Drolla].   We [Pogo] were operator of record.
>
> Q. What do you mean by "operator of record?"
>
> A. Meaning we [Pogo] were responsible for compliance.
>
> Q. What do you mean by "responsible for compliance?"
>
> A. You have many safety components on a facility and you have to be in compliance through the eyes of the MMS. When you become operator of record, you are responsible for that.
>
> Q. Do you believe that Pogo had a responsibility to make sure that the platform was reasonably safe during the time it operated as operator?
>
> A. Yes.[6]

\* \* \*

---

[6] *See* Deposition of Phil Drolla, p. 87:11-87:25, p. 88:1-88:4, attached as Exhibit "B" to Discovery's opposition brief, Doc. 128.

> Q. When you talked about the Minerals Management Service, for you to become an operator of record with the MMS, what is your understanding of what that means?
>
> A. **Well we [Pogo] become responsible for safety, health, environmental issues...**[7]
>
> * * *
>
> Q. SO as far as MMS is concerned, because Pogo was the record operator, the **MMS would look at Pogo for compliance and safety** and all the things that you described?
>
> A. **Correct.**[8]

Furthermore, in its opposition brief, Discovery cites the following testimony from Mr. Drolla's deposition, wherein Mr. Drolla testified regarding Pogo's responsibility for safety issues aboard the platform vis-a-vis the Minerals Management Service:

> Q. Do you know if there was a mechanism if because there was a lack of attention to detail and some safety concern arose and the MMS would fine or cite Pogo because they were operator of record, was there any mechanism for that fine or expense to be transferred to Wood Group?
>
> A. Well not transferred to Wood Group, per se, in the sense of – I mean, we're operator of record, so we had to take the heat, so to speak.
>
> Q. [A]s far as MMS is concerned, they're going to look at Pogo, no matter who the contract operator is?
>
> A. That is correct, ultimately.

Discovery argues the forgoing testimony shows Pogo should not be allowed to shift its responsibility to Wood Group, no matter what their contractual agreement stated.

Plaintiffs contend the inconsistency between the evidence and arguments of Pogo – wherein

---

[7] *Id.* at p. 150:12-150:20 (emphasis added).

[8] *Id.* at p. 152:14-152:20 (emphasis added.)

Pogo asserts the Master Service Contract between Pogo and Wood Group shows Pogo delegated responsibility for all safety and operational duties to Wood Group, the employer of Hughes, and its employees – and the actual testimony of Pogo employees Guy Williams and Phil Drolla – who testified Pogo retained the ultimate responsibility for custody and control of the platform as the operator of record of the platform – creates an issue of material fact as to whether Pogo can be considered a custodian of the platform pursuant to Article 2317.1. Plaintiffs contend whether Pogo *could* and whether Pogo *did* delegate its responsibilities as operator of the platform is in dispute, thus, at a minimum is a contested factual issue precluding summary judgment.

While this Court acknowledges the fact the MMS looks ultimately to Pogo for safety issues is not determinative of whether this Court will look ultimately to Pogo, this Court is faced with disputed facts regarding whether Pogo actually had custody of the platform at the time of Mr. Hughes's alleged injury in light of the conflicting evidence submitted by the parties. Furthermore, whether Pogo might have a contractual claim against the Wood Group for breach of whatever obligations the Wood Group might, pursuant to that contact, owe to Pogo, is a separate issue from whether Pogo, as the record operator, might have a duty as to the platform itself, as is any potential comparative fault on the part of Hughes, as the Woods employee with authority over the platform. It would seem, should Pogo have a duty, under law or contract, owed to one such as the plaintiff, any attempt by Pogo to transfer that duty, by way of contract with the Wood Group, would be a matter between Pogo and the Wood Group. Additionally, it would seem should Hughes, as plaintiff, have comparative fault, under tort, again this would be a matter not for the Court's determination, but for the trier of fact. Thus, two separate but related legal inquiries exist – one grounded in contract and one in tort, and at this juncture, as to both, genuine issues of material fact exist. However, this Court

need not, nor does it, make any determination as to the duties and obligations which might or might not be owed by way of contract or of tort vis-a-vis the plaintiff and any party pursuant to a contract. Rather, it will suffice for these purposes to note there exist genuine issues of material fact as to the amount and degree of control Pogo retained as to the platform, and the amount and degree of control Hughes, as plaintiff and as an employee of Woods, possessed and exercised as to the platform.

Considering the burden of production associated with summary judgment motions, the legal presumptions which attach to evidence produced by a non-movant, and the prohibition against weighing evidence in this context, this Court finds the evidence presented by plaintiffs demonstrates the existence of genuine issues of material fact as to whether Pogo was a custodian of the bunk beds/living quarters in question on the date Mr. Hughes was injured. Therefore, IT IS ORDERED that Pogo's motion for summary judgment seeking dismissal of plaintiffs' premises liability claim is DENIED.

### b. Did Pogo have knowledge – or should it have had knowledge – of the alleged defect in the bunk bed/living quarters?

Alternatively, Pogo argues even if this Court concludes it was a custodian of the living quarters of the platform, it cannot be liable under Article 2317.1 because it had "neither actual nor constructive knowledge of the defect." Pogo contends it could not have known about any alleged platform defects unless the defect had been reported to it by a contractor's representative such as Mr. Hughes, and to date, all fact witnesses have testified they had no knowledge of any reports regarding the bunk beds, nor did they report any problems themselves. Pogo further contends the plaintiff, Mr. Hughes testified in his 32 years of offshore work experience, all bunk beds/ladder arrangements were the same, and as the Woods' employee in charge of the platform, he never reported this arrangement to be defective. Finally, Pogo contends MMS inspected the platform and did not issue any citations

regarding the bunk beds or ladder, and periodic safety audits were conducted by Wood Group, which did not reveal anything unsafe about either.

With respect to the issue of knowledge, plaintiffs contend Phil Drolla a Pogo employee, testified he visited Grand Isle 115 between a dozen to 50 times and spent several weeks on the platform during its start-up period. Mr. Drolla testified he slept in the upper bunks; he used the ladders to get in and out of the bunk beds; and the ladders did not have a handrail or guardrail at the time he slept in them. Plaintiffs contend these facts establish Pogo knew or should have known the lack of handrails/guardrails and the rungs of the ladder being improperly spaced, created an unreasonable risk of harm as their own representative used the bunk beds prior to Mr. Hughes's accident.

This Court suggests plaintiff's argument overstates the issue. However, the Court does conclude issues of material fact exist regarding whether Pogo knew or should have known of the alleged defect in the bunk beds/living quarters at the time of Mr. Hughes's injury as Pogo knew of the condition of the bunk bed, whatever that condition might have been. At least one Pogo representative slept in an upper bunk bed onboard Grand Isle 115 on several occasions. Whether the condition of the bunk beds, whatever it might have been, rendered the beds unreasonably dangerous is, at this juncture, a question of fact. Therefore, this Court cannot determine, at this time, whether Pogo knew or should have known *of an alleged unreasonably dangerous condition – as it remains a question of fact as to whether the condition of the bunk beds – clearly known to Pogo – posed an unreasonable risk of harm*. For this reason, summary judgment on this issue is inappropriate at this time.

Therefore, IT IS ORDERED that Pogo's motion for summary judgment seeking dismissal of plaintiffs' premises liability claim is DENIED.

### 3. Mr. Hughes's own negligence prevents or reduces his recovery

Pogo argues Mr. Hughes testified to his own negligence at the time of his injury and such testimony would bar and/or mitigate his recovery, however comparative fault applies. Consequently, this Court agrees with the plaintiffs that whether – and to what extent – plaintiff's negligence might reduce his recovery is a question of fact that cannot be determined at this stage of the litigation. Any issues regarding fault as to the plaintiff, himself, or any of the defendants and apportionment of fault of any tortfeasors and plaintiff, is a matter that is inappropriate in a summary proceeding.

Even if this Court were to assume negligence on plaintiff's part, questions remain as to fault as to Pogo as well, thus plaintiff's negligence would not, necessarily, exonerate Pogo of any fault.

Considering the foregoing, to the extent Pogo is seeking summary judgment on grounds plaintiff's own negligence would bar his recovery, such request is DENIED.

## IV. Conclusion

For the foregoing reasons,

IT IS ORDERED that Pogo's Motion for Oral Argument [Doc. 113] is DENIED.

IT IS FURTHER ORDERED that Pogo's motion seeking dismissal of plaintiff's LPLA claim – which is not opposed by plaintiffs – is GRANTED, and plaintiffs' LPLA claim against Pogo is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that there are genuine issues of material fact regarding whether Pogo was a custodian of the bunk beds/living quarters in question on the date Mr. Hughes was injured and whether Pogo knew or should have known the bunk bed/living quarters had a defect

and/or were unreasonably dangerous at the time of Mr. Hughes's injury. Therefore, IT IS ORDERED that Pogo's motion for summary judgment on plaintiff's premises liability claim is DENIED.

IT IS FURTHER ORDERED that to the extent Pogo is seeking summary judgment on grounds plaintiff's own negligence would bar his recovery, such request is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _20_ day of February 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE