RECEIVED
03 03 09 PY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DANIEL HUGHES, ET AL. | CIVIL ACTION NO. 06-1894 |
| VERSUS | JUDGE DOHERTY |
| POGO PRODUCING COMPANY, ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is the Motion for Summary Judgment filed by defendants Atlantia Corporation and Atlantia Offshore, Ltd. ("Atlantia")[1] [Doc. 121] and the Motion for Oral Argument filed by Atlantia [Doc. 122]. In its motion, Atlantia "moves this Honorable Court for summary judgment dismissing the claims of the plaintiffs" on grounds "Atlantia did not own or control the offshore platform at Grand Isle 115, Atlantia did not manufacture the bunk bed or ladder that allegedly caused Daniel Hughes'[s] accident and Atlantia turned the platform over to its owner in 1997." Although it does not specify the individual claims for which is seeks dismissal, this Court assumes from Atlantia's argument Atlantia seeks dismissal of all of plaintiffs' claims against it.

Plaintiffs Daniel and Laurie Ann Hughes, on behalf of themselves and their minor children, and defendant Pogo Producing Company ("Pogo") have filed opposition briefs [Docs. 132 & 130, respectively], and Atlantia filed a reply brief to plaintiffs' opposition brief [Doc. 143]. For the following reasons, Atlantia's Motion for Oral Argument [Doc. 122] is DENIED, and Atlantia's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

---

[1] Where an allegation is made against one of the Atlantia entities specifically, this Court has attempted to refer to that entity by name. Otherwise, this Court refers to the Atlantia entities interchangeably as "Atlantia."

I. **Factual and Procedural Background**

The general facts of this case have been set forth in previous rulings issued by this Court and will not be set forth again in this ruling. Only those facts not previously discussed and applicable to Atlantia's motion for summary judgment will be recited herein.

At the time of his injury, Hughes was employed by Wood Group Production Services ("Wood Group), a contract operator for Pogo. Pogo is the MMS operator of record for Grand Isle 115, the platform at issue in this case. In 1996, Atlantia contracted with British Borneo USA, Inc. – the predecessor-in-interest to ENI Petroleum US, L.L.C. and/or ENI US Operating Co., Inc. (collectively, "ENI")[2] – to build a production platform for British Borneo in the Gulf of Mexico. Atlantia Corporation admits it designed and built the *jacket and decks* of the platform, with design input from British Borneo. However, Atlantia Corporation alleges it did not approve the details of the design of the *living quarters* package or the bunk beds and ladders found within the living quarters package. Rather, Atlantia Corporation alleges British Borneo specified the platform should have living quarters for eight men, therefore, Atlantia Corporation shopped for and bought an eight-man living quarters package from Total Building Systems, Inc. ("TBS").[3] The living quarters package was then welded and permanently attached to the top of the platform, a process Atlantia Corporation admits it oversaw. Plaintiffs dispute the foregoing facts, contending the deposition testimony shows Atlantia was involved in the actual design of the living quarters.

Atlantia Corporation contends it completed the design and construction of Grand Isle 115

---

[2] ENI Petroleum US, L.L.C. alleges it was erroneously named as ENI US Operating Co, Inc, in the plaintiffs' complaint.

[3] Plaintiffs originally sued TBS in this matter, however, TBS is no longer in business, and plaintiffs dismissed TBS as a party to this suit. The parties have not provided this Court with any further information regarding TBS.

on September 23, 1997, at which time Atlantia Corporation sold the platform to its client, British Borneo. The platform was turned over to British Borneo on that date.

Atlantia Offshore states it was formed for other purposes and had no involvement in the design or construction of the Grand Isle 115 platform. Plaintiffs dispute this allegation.

In their Fourth Supplemental and Amending Complaint, plaintiffs allege the following claims against all defendants, including Atlantia:

8.

This incident was not due to any negligence on the part of Mr. Hughes but rather was caused by the negligence and/or fault of Pogo, Discovery Producer Services, LLC, British Borneo/Eni, Atlantia Offshore, Ltd. and/or Atlantia Corporation in the following non-exclusive particulars, among others to be more fully shown at the trial of this matter, to-wit:

  a. Designing, constructing, manufacturing, refurbishing, and/or maintaining a defective bunk bed in the living quarters aboard the platform Grand Isle 115;

  b. Owning, maintaining, and providing defectively designed bunk bed in said living quarters aboard the platform Grand Isle 115;

  c. Failing to take proper steps to insure that the living quarters including the bunk beds were free of any vices or defects;

  d. Failing to provide a safe place to live and work on the platform Grand Isle 115; and

  e. Failing to exercise reasonable care to prevent injury caused by a defective thing in its custody."[4]

Atlantia filed the instant motion for summary judgment arguing three grounds: (1) the Atlantia entities did not own or control the platform on the date of Mr. Hughes's injury and,

---

[4] *See* Plaintiffs' Fourth Supplemental and Amending Complaint, Doc. 93, at ¶8.

therefore, cannot be liable to plaintiffs under a premises liability theory; (2) the Atlantia entities did not manufacture the bunk bed or ladder that allegedly caused Mr. Hughes's accident; rather, Atlantia Corporation constructed *the platform*, which is not a product under the Louisiana Products Liability Act ("LPLA"); because the plaintiffs are alleging the defective product is a *bunk bed or ladder*, and not a platform, there can be no liability against Atlantia Corporation under the LPLA; and (3) the only Atlantia entity involved with the Grand Isle project was *Atlantia Corporation*; *Atlantia Offshore* was formed for other purposes and did not design or construct Grand Isle 115; therefore, summary judgment is appropriate in favor of Atlantia Offshore with respect to all of plaintiffs' claims.

## II.   Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III. Law and Analysis

Federal jurisdiction in this matter is based on the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.* "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations. "Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'" Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003)(citations omitted); *see also* 43 U.S.C. § 1333(a)(2)(A).

1.  **Premises Liability Claim**

Plaintiffs allege a claim against Atlantia Corporation and Atlantia Offshore for "[o]wning, maintaining, and providing [a] defectively designed bunk bed in said living quarters aboard the platform Grand Isle 115[.]" To the extent plaintiffs are suing Atlantia for owning a defective premises, the claim is governed by Articles 2317.1 and 2322 of the Louisiana Civil Code.[5]

In the instant motion, Atlantia Corporation argues it did not own or control the platform at the time of Mr. Hughes's injury, as it turned the platform over to British Borneo in September 1997. Essentially, Atlantia Corporation argues there is no genuine issue of fact that plaintiffs cannot prove the essential element of "custody" under the foregoing articles, as Atlantia Corporation did not own the platform on January 2, 2006, the date of the plaintiff's alleged accident. Indeed, from the briefs filed by the parties, it appears Dynamic owned the platform at the time of plaintiff's injury. Plaintiffs do not oppose this portion of Atlantia's motion.

---

[5] Article 2317.1 states:

> The *owner or custodian* of a thing is answerable for damage occasioned by its ruin, vice, or defect, *only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.*

La. Civ. Code art. 2317.1 (West 2009) (emphasis added).

Article 2322 states:

> *The owner of a building* is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. Code art. 2322 (West 2009) (emphasis added).

Considering the foregoing, there is no genuine issue of material fact that at the time of the Mr. Hughes's injury, *neither* Atlantia entity owned or controlled the platform in question, and *neither* can be liable to plaintiffs pursuant to Articles 2317.1 or 2322 of the Louisiana Civil Code. Considering the foregoing, Atlantia's motion for summary judgment seeking dismissal of plaintiffs' premises liability claim – which is not opposed by plaintiffs – is GRANTED, and plaintiffs' premises liability claims against both Atlantia Corporation and Atlantia Offshore, Ltd. are DISMISSED WITH PREJUDICE.

### 2. Is Atlantia a "Manufacturer" under the LPLA?

Atlantia Corporation and Atlantia Offshore seek summary judgment on grounds they cannot be liable under the LPLA because they are not "manufacturers" under that statute of either the bunk bed from which Mr. Hughes fell, the allegedly defective ladder, or the living quarters package in which the allegedly defective bunk bed and ladder were located. Rather, *Atlantia Corporation* contends it constructed the Grand Isle 115 *platform*, which is not a *product* under the LPLA, and that because plaintiffs are alleging the defective *products* are a *bunk bed and/or ladder*, and not a platform, there can be no liability against Atlantia Corporation under the LPLA. *Atlantia Offshore* contends it had no involvement in the design and construction of the platform at all.

La. Rev. Stat. 9:2800.53 defines a "manufacturer" under the LPLA as follows:

(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturer" also means:

> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.

> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

(c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

La. Rev. Stat. §9:2800.53(1)(a)-(c) (West 2009).

Plaintiffs contend Atlantia arguably falls into categories (a), (b) and (c) with respect to the Grand Isle 115 platform, contending "the testimony of corporate representatives of Atlantia and ENI . . . .clearly demonstrates Atlantia's level of involvement in the living quarters' design, manufacture, and incorporation into Grand Isle 115." Plaintiffs further contend there is evidence Atlantia Offshore was involved in the design and construction of the platform.

First, Atlantia Corporation has admitted it constructed a *platform*. As this Court observed in its ruling on ENI's motion for summary judgment, Louisiana courts interpreting Louisiana law have already made a policy determination that permanent structures, such as fixed drilling platforms -- which have a permanent foundation in the soil -- are buildings. *See Olsen v. Shell Oil Co.*, 365 So. 2d 1285, 1290 (La. 1978) (holding that a permanent structure, such as a fixed drilling platform, which has a permanent foundation in the soil, is a building). *See also Bruyninckx v. Bratten*, 554 So.2d 247, 248 (La. App. 3rd Cir. 1989) (a fixed drilling platform is a building). Although the parties have not fully briefed whether such buildings are immovables and that issue is, therefore, not squarely before the Court,[6] this Court need not determine whether the Grand Isle 115 platform, itself, is a movable or an immovable and/or whether the platform is a thing subject to the LPLA, *because*

---

[6] This Court notes Article 464 of the Louisiana Civil Code, which states:

> Buildings and standing timber are separate immovables when they belong to a person other than the *owner of the ground.*

La. Civ. Code. art. 464 (West 2009).

*the plaintiffs have not alleged the platform itself is defective.*[7] Rather, the plaintiffs have alleged the defective thing or things in this case are the *bunk bed and/or ladder* located in *the living quarters* of the platform. Thus far, the parties in this case appear to be in agreement that the bunk bed and/or the ladder in question, themselves, are *movables* and as such could be considered products within the meaning of the LPLA.

This Court now turns to the issue of whether Atlantia manufactured the allegedly defective bunk bed and/or ladder or the living quarters package at issue. As the movant, Atlantia must put forth evidence showing it did not, in fact, manufacture these alleged products. In support of its motion, Atlantia contends it purchased the living quarters package and thus the bunk bed and ladder in question from TBS, which actually manufactured the living quarters package and presumably the bunk bed and ladder contained therein.[8] Atlantia contends it then welded the entire living quarters package – which contained the bunk bed and ladder – on to the platform, and thereafter, sold the entire platform to British Borneo/ENI. Atlantia contends ordering the living quarters package from TBS, welding the living quarters package to the platform, and then selling the completed platform to British Borneo/ENI does not render Atlantia a "manufacturer" of the bunk bed and ladder or the living quarters package themselves, for purposes of the LPLA.

Atlantia relies on *Parks v. Baby Fair Imports, Inc.*, 726 So. 2d 62 (La. App. 5th Cir. 1998) in support of its argument. In *Parks*, the issue before the court was whether a defendant retailer of a children's shirt that was allegedly unreasonably flammable was a manufacturer of the shirt. The

---

[7] Plaintiffs allege *the platform* itself, should be deemed a product under the LPLA because plaintiff alleges at the time the platform was manufactured, it was not permanently attached to the ocean floor. The plaintiffs cite no facts or legal authority to support this position.

[8] As noted earlier, TBS is no longer in business and the parties have provided no additional information as to TBS.

plaintiffs bought the shirt from K-Mart, which ordered the shirt from the manufacturer, Baby Fair. Apparently, K-Mart was able to choose certain features of the shirt when ordering, and K-Mart requested a non-specific 55% cotton/45% polyester jersey fabric in a certain color. Beyond specifying the fiber content and color of the fabric, K-Mart had nothing else to do with the fabric selection of the shirt; the specific selection of the particular type of and nature of 55% cotton/45% polyester jersey was left to the manufacturer.

The plaintiffs alleged K-Mart custom-ordered the shirt from Baby Fair; the shirt was not available "on the shelf," but was made to K-mart's specific instructions; and K-Mart specifically chose the fabric quality of the shirt. Therefore, plaintiffs alleged K-Mart exercised control over and influenced the design and construction of the shirt, and thus, should be deemed a manufacturer/seller upon whom liability could be imposed under the LPLA. *Parks*, 726 So. 2d at 63. K-Mart argued it was only a seller of the shirts, and it merely placed an order to Baby Fair and did not design or influence the construction of the shirt. *Id.*

The trial court granted summary judgment in favor of K-Mart, and the Louisiana Fifth Circuit Court of Appeals affirmed, observing:

> We agree with the trial court that K-Mart's placement of this order with Baby Fair does not rise to the level of exercising control over or influencing a characteristic of the design, construction or quality of the product. It appears that K-Mart made a selection from goods available from Baby Fair. Plaintiffs' interpretation would turn all sellers who made specific selections of goods offered from manufacturers into manufacturers themselves. We believe that the legislature intended more direct and specific conduct on the part of the seller than that exhibited by K-Mart in this case. Thus, we conclude that K-Mart was not a manufacturer/seller of the shirt.

*Id.* at 64.

Like the retailer in *Parks*, Atlantia argues it, too, simply took specifications from British

Borneo/ENI and "went shopping" for an eight-man living quarters package from reputable manufacturers. Atlantia contends it selected TBS and specified the living quarters package it ordered should be an eight-man living quarters. Atlantia bought the living quarters package from TBS and then incorporated the living quarters package into the platform and sold the entire, completed platform to its client, British Borneo/ENI.

For the reasons noted above, this Court finds Atlantia has met its burden of presenting *prima facie* evidence that it is not the manufacturer of the bunk beds, ladder, and living quarters package in question. The burden now shifts to plaintiffs to present "more than a scintilla of evidence" showing there is a genuine issue of material fact with respect to this issue. In response, plaintiffs argue Atlantia did more than merely place an order for the living quarters package. Plaintiffs contend there are genuine issues of material fact in dispute concerning the extent of Atlantia's involvement in the design and manufacture of the *living quarters package*, and whether Atlantia should, therefore, be deemed a manufacturer *of the living quarters* package and thus, the bunk beds and ladder found within that package, including:

- Atlantia was involved in the manufacture and designed of the *platform as a whole, including the incorporation of the living quarters into the platform;*

- Atlantia had its own on-site inspector at the fabrication yard *who supervised the process of welding the top deck (including the living quarters) to the platform;* and

- At some point during the design and manufacturing of the platform, *there was a decision made by either British Borneo/ENI or Atlantia to change the layout from a six (6) man to an eight (8) man living quarters.*

Close examination of the evidence set forth by plaintiffs however, shows the evidence presented focuses on Atlantia's involvement in the design of the *platform itself* – which is not surprising, as Atlantia was constructing a platform (which this Court has held is not subject to the

-12-

LPLA and which plaintiffs are not claiming is defective as a whole). When viewed carefully, the only evidence set forth by plaintiffs that relates to the bunk beds and ladder comes by way of their having been incorporated into the *living quarters package*, and suggests there is evidence that at some point, there was a decision to change the layout of the living quarters package from a six-man to an eight-man living configuration. From the testimony presented by the parties, it is unclear whether this was a decision made by British Borneo/ENI or Atlantia. However, regardless of who made this decision, the Court notes there is no evidence such a decision affected the *design* of the bunk beds and/or ladders or even of the broader living quarters package itself, as it relates to the bund beds or ladders. Atlantia's involvement, accepting plaintiff's arguments and facts as true, is very similar to K-Marts involvement and specification of fabric content in *Parks*. Here, plaintiffs *have set forth no evidence* even suggesting the choice to order an eight man configuration rather than a six man configuration would have, in any way, impacted the *design* of the bunk bed or ladder in question, or the living quarters package as it relates to the allegedly defective bund beds or ladder.

Moreover, this Court concludes plaintiffs' argument that Atlantia should be deemed a manufacturer of the bunk beds and ladder because the living quarters package is a *component part* of the platform is misplaced. Although "manufacturer" under the LPLA includes a "manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer" La. Rev. Stat. §9:2800.53(1)(c) (West 2009), plaintiffs' reading of the foregoing to mean that, because the bunk bed and ladder were incorporated into the living quarters package and Atlantia incorporated the living quarters package into its construction, Atlantia should be deemed the *de facto* manufacturer of the living quarters is misplaced. Here, once Atlantia – the constructor of the platform – incorporated the living quarters package – a component part which had been

manufactured by TBS – into the platform, Atlantia did in fact construct the *entire platform*, that is *the entire platform as a whole*. However, Atlantia did not *manufacture* the bunk beds or ladder nor the living quarters package, itself. Rather, Atlantia was engaged in constructing a platform much as a building contractor engages in the construction of a house, and in so doing incorporated certain component parts which had been manufactured by a third party, much as a building contractor does. As this Court has already noted, plaintiffs are not alleging the platform as a whole is defective or in ruin. Rather, plaintiffs are alleging only the bunk bed and ladder found within the living quarters package, and thus, perhaps the living quarters package itself, are defective. This Court does not read Section 9:2800.53(1)(c) to mean Atlantia – by incorporating a living quarters package which contained allegedly defective bunk beds and ladder into the platform – thereby becomes the manufacturer of the bunk beds, ladders and living quarters package.

Considering the foregoing, this Court concludes plaintiffs have not carried their burden to successfully rebut the evidence put forth by Atlantia to establish there are genuine issues of material fact that Atlantia was a manufacturer of the bunk bed and/or ladder and/or living quarters package. Consequently, this Court concludes both Atlantia Corporation and Atlantia Offshore, Ltd. are entitled to summary judgment on plaintiffs' LPLA claims.[9]

---

[9] This Court notes the decision today may appear to be inconsistent with this Court's recent ruling on ENI's motion for summary judgment put forth on similar grounds. However, after a careful reading of ENI's motion, this Court notes the rulings are not inconsistent, notwithstanding the fact that ENI and Atlantia are, for the most part, factually aligned. The record shows ENI did not provide this Court with pertinent information that would have made summary judgment in its favor appropriate. For example, ENI focused on the fact that it merely ordered the platform from Atlantia, without specifying that the living quarters were actually manufactured by a third party. In fact, nowhere in ENI's motion is TBS referenced. Additionally, ENI did not move for summary judgment on grounds the platform itself is not a product subject to the provisions of the LPLA. Rather, this was an argument ENI included only in passing in its memorandum in support of its actual motion for summary judgment. Moreover, in response to ENI's motion, plaintiffs offered evidence that ENI was *intimately involved* in the *design* and manufacture, *including the living quarters*. In the face of ENI's motion -- which, again, did not include evidence that the living quarters were manufactured by a third party -- this Court held **there were genuine issues of material fact** that precluded summary judgment in ENI's favor. In short, this Court reaffirms its holding in connection with ENI's motion, but does so not on a substantive basis, but rather notes this Court found **ENI did not satisfy its burden of proof in**

### 3. Which Claims are Dismissed?

As this Court noted at the beginning of this Ruling, Atlantia does not specify the individual claims for which it seeks dismissal, and this Court, therefore, assumes from Atlantia's argument Atlantia seeks dismissal of all of plaintiffs' claims against it.

A review of plaintiffs' Fourth Supplemental and Amending Complaint shows plaintiffs alleges the following claims against Atlantia:

8.

a. Designing, constructing, manufacturing, refurbishing, and/or maintaining a defective bunk bed in the living quarters aboard the platform Grand Isle 115;

b. Owning, maintaining, and providing defectively designed bunk bed in said living quarters aboard the platform Grand Isle 115;

c. Failing to take proper steps to insure that the living quarters including the bunk beds were free of any vices or defects;

d. Failing to provide a safe place to live and work on the platform Grand Isle 115; and

e. Failing to exercise reasonable care to prevent injury caused by a defective thing in its custody."[10]

Although it is clear the claim raised in ¶8(a) for "[d]esigning, constructing, manufacturing, refurbishing, and/or maintaining a defective bunk bed in the living quarters aboard the platform Grand Isle 115" (clearly a claim arising under the LPLA) and ¶8 (b) for "[o]wning, maintaining, and providing defectively designed bunk bed in said living quarters aboard the platform Grand Isle 115" (clearly a premises liability claim) are adjudicated by way of this Court's ruling this date, it is less

---

connection with its motion for summary judgment.

[10] *See* Plaintiffs' Fourth Supplemental and Amending Complaint, Doc. 93, at ¶8.

than clear whether the remaining claims – those alleged in ¶¶8(c), 8(d) and 8(e) – are similarly adjudicated by the instant ruling.

Pogo argues, in its opposition brief, that Atlantia failed to conduct a safety review or inspection of the living quarters prior to turning the platform over to British Borneo – a fact this Court notes Atlantia admits in its memorandum in support of its motion for summary judgment ("Atlantia did not conduct any type of safety review or inspect the quarters manufactured by Total Body Systems.").[11] Whether this fact and/or admission would potentially expose Atlantia to liability – and whether that fact is contained in or otherwise couched in one of the claims pled by plaintiffs and not adjudicated herein – is unknown to the Court. The parties each, have failed to carry their respective burdens of proof as to any claims – potential or otherwise – other than those directly addressed by this Court's ruling. This Court has adjudicated only Atlantia's motion to dismiss plaintiffs' LPLA and premises liability claims against it. Any remaining claims against Atlantia – to the extent there are any remaining claims in plaintiffs' complaint that have not been resolved in the instant motion – remain pending against Atlantia at this time.

## IV. Conclusion

For the foregoing reasons,

IT IS ORDERED that Atlantia's Motion for Oral Argument [Doc. 122] is DENIED.

IT IS FURTHER ORDERED that Atlantia's Motion for Summary Judgment [Doc. 121] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that there are no genuine issues of material fact that at the time of the Mr. Hughes's injury, neither Atlantia Corporation nor Atlantia Offshore, Ltd. owned the

---

[11] See page 4 of Atlantia's memorandum in support of motion for summary judgment.

platform in question, and neither can be liable to plaintiffs pursuant to Articles 2317.1 and 2322 of the Louisiana Civil Code on that basis. Therefore, Atlantia's motion for summary judgment seeking dismissal of plaintiffs' premises liability claim – which is not opposed by plaintiffs – is GRANTED and plaintiffs' premises liability claims against both Atlantia Corporation and Atlantia Offshore, Ltd. are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that there are no genuine issues of material fact that Atlantia Corporation and Atlantia Offshore, Ltd. are not manufacturers of the allegedly defective bunk bed and/or ladder and/or living quarters at issue pursuant to the LPLA and Atlantia's motion for summary judgment on this ground is GRANTED. Therefore, plaintiffs' LPLA claims against both Atlantia Corporation and Atlantia Offshore, Ltd. are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED THAT to the extent Atlantia is requesting any additional claims be dismissed, such request is DENIED. Any remaining claims against Atlantia – to the extent there are any remaining claims in plaintiffs' complaint that have not been resolved in the instant motion– remain pending against Atlantia at this time.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___ day of March 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE