RECEIVED
MAR 1 1 2009
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DANIEL HUGHES, ET AL. | CIVIL ACTION NO. 06-1894 |
| VERSUS | JUDGE DOHERTY |
| POGO PRODUCING COMPANY, ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is the "Motion for Summary Judgment on Behalf of Discovery Producer Services, L.L.C. ("Discovery")" [Doc. 119]. Discovery seeks summary judgment on its cross-claim for defense and indemnity against Pogo Producing Company ("Pogo") on grounds the Louisiana Oilfield Anti-Indemnity Act ("LOIA") does not apply to the Discovery-Pogo contract because the contract does not "pertain to a well." Pogo opposes the motion [Doc. 84].

For the following reasons, Discovery's motion for summary judgment is GRANTED.

### I. Factual and Procedural Background

The general facts of this case have been set forth in previous rulings issued by this Court and will not be set forth again in this ruling. Only those facts not previously discussed and applicable to Discovery's motion for summary judgment will be recited herein.

In the instant litigation – which arises out of the alleged personal injuries suffered by the plaintiff, Daniel Hughes, while attempting to descend from a top bunk bed located in the living quarters of the Grand Isle 115 platform – movant Discovery is the alleged owner of the Grand Isle 115 platform. Pogo is the alleged operator of the platform. In the instant motion, Discovery contends the following:

At the time of the alleged incident, a contract between Discovery and Pogo was in effect whereby Pogo assumed responsibility for the operation and maintenance of the GI 115. Pursuant to this contract, Pogo agreed to defend and indemnify Discovery against the claims of Pogo's employees and subcontractors. Since Mr. Hughes is an employee of Wood Group, a subcontractor of Pogo, the indemnification provision unquestionably covers his claims against Discovery.[1]

The contract to which Discovery refers is the October 1, 2000 contract executed by Discovery and Pogo, entitled "Agreement for the Operation and Maintenance of the Discovery Platform," which contains the following provision:

> 8.1 **Indemnification.** Each Party agrees to fully defend, protect, indemnify, hold harmless, and render whole the other Party, its officers, directors, employees and agents from and against each and every claim, demand or cause of action, and any liability, fine, penalty, cost, expense (including, but not limited to, reasonable attorneys' fees and court costs), damage or loss in connection therewith that may be made or asserted by any Party on account of personal injury or death to such Party's employees, subcontractors and invitees, or property damage to property of such Party, its subcontractors and invitees, caused by, arising out of, or in any way incidental to or in connection with the performance of this Agreement, regardless of whether such personal injury or death or property damage (or liability thereof) was caused by the sole negligence or fault of the indemnified Party, or by the concurrent negligence or fault of any combination of a Party, any contractor or any third party whether such liability for personal injury or death or property damage, with or without fault, is imposed on any combination of any theory of contract, negligence or strict liability.
>
> Any applicable statutory, regulatory or judicial limitations or restrictions now or hereafter imposed that a Party hereto asserts affects the validity or enforceability of the indemnification provisions shall operate to amend the indemnity provisions hereof only to the minimum extent necessary to bring such provision into conformity with the particular statutory, regulatory or judicial requirements. As so modified the indemnity provisions hereof shall continue in force and effect to the fullest extent permitted by applicable law.

Pogo has refused Discovery's request for indemnification.[2] On December 24, 2008, Discovery filed a cross-claim against Pogo, seeking defense and indemnity for all claims brought by

---

[1] *See* Discovery's motion for summary judgment, Doc. 119, at p. 2.

[2] *See* May 2, 2007 letter from Emile J. Dreuil, III to Betsy Lou Kay, Sr. Claims Manager with The Williams Companies referencing the Daniel Hughes claims file, attached as Exhibit "B" to Discovery's motion for summary judgment.

plaintiffs [Doc. 98] pursuant to the foregoing provision in the contract.[3] In its cross-claim, Discovery alleges:

### IV.

An agreement for the Operation and Maintenance of the Discovery Platform referred to as the Grand Isle 115 was entered into between Discovery and Pogo on October 11, 2000 (hereinafter referred to as "Agreement").

### V.

This Agreement contained Indemnification and Limitations Provisions that can be found in Article VII, Sections 8.1, 8.2 and 8.3. These provisions establish Discovery's and Pogo's intent regarding how responsibilities are defined when litigation is initiated against one of the parties to the Agreement by employees, subcontractors, invitees, etc. This Agreement also contains insurance requirements between the parties.

### VI.

On December 21, 2006, Daniel Hughes, an employee of The Wood Group, filed suit against Discovery Producer Services in the above captioned matter for an alleged incident that occurred on or about January 2, 2006 on the Grand Isle 115.

### VI. [sic]

At the time of plaintiff's alleged injuries, plaintiff was in the course and scope of his employment for The Wood Group.

### VII.

The Wood Group was hired by Pogo to operate the Grand Isle 115.

### VIII.

Pursuant to Article VIII of the Agreement, Pogo agreed to release, defend, protect, indemnify, and hold Discovery harmless from and against any lawsuit filed by one of its subcontractors and/or invitees. This obligation clearly includes the lawsuit filed by Mr. Hughes.

---

[3] Pogo has not filed an answer to the cross-claim, however Discovery's motion for summary judgment is timely, as more than twenty days have passed since the cross-claim was filed. *See* Rule 56(a)(1) of the Federal Rules of Civil Procedure.

IX.

On February 14, 2007, Discovery formally requested that Pogo honor its obligation to defend and indemnify Discovery from the lawsuit of one of its subcontractors and/or invitees and provide insurance coverage for same. On May 2, 2007, Pogo formally rejected Discovery's request, thus requiring the filing of this cross-claim.

X.

Accordingly, Pogo owes Discovery defense, indemnity and insurance coverage for the following non-exclusive damages:

A. Any damages which may be awarded to plaintiffs;
B. All attorney's fees and costs in defending Plaintiffs' case, as well as filing the instant Cross Claim, and,
C. All other damages to which Discovery is entitled as a matter of based, based on the Agreement.[4]

Discovery filed the instant motion for summary judgment on grounds the LOIA does not apply to the contract between Discovery and Pogo, because the contract does not "pertain to a well." Rather, Discovery argues the Grand Isle 115 platform is merely a co-mingling station where the natural gas from three incoming pipelines – each of which carries the co-mingled production of multiple wells -- is further co-mingled and pumped into one pipeline destined for the refinery. The issue is dispositive of Discovery's claim for defense and indemnity, because if the contract does not "pertain to a well," the LOIA does not apply to the contract between Discovery and Pogo, and the defense and indemnity provision in the contract is enforceable, as Pogo has raised no other ground upon which the indemnification provision would be unenforceable. If that is the case, Discovery would be entitled to summary judgment on its claim that Pogo is required to defend and indemnify Discovery in the instant litigation.

---

[4] *See* Discovery's Cross-Claim against Pogo, Doc. 98, ¶¶4-10.

-4-

## II. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility

determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III. Law and Analysis

### A. Jurisdiction

Federal jurisdiction in this matter is based on the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.* "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations. "Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'" Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003)(citations omitted); *see also* 43 U.S.C. § 1333(a)(2)(A).

Discovery states in its motion "[i]t is undisputed that Louisiana law, as the law of the adjacent state, applies to this dispute pursuant to the Outer Continental Lands Shelf Act," and indeed, Pogo does not dispute the application of the OCSLA. Indeed, Pogo attempts to argue that by acknowledging the application of Louisiana law, Discovery concedes the application of the LOIA to the contract. As is apparent from the thrust of Discovery's brief, however, Discovery is arguing just the opposite, and Pogo's attempt to characterize Discovery's motion as a concession that the LOIA is applicable is disingenuous, at best. However, as neither party disputes the application of Louisiana law, this Court assumes for purposes of this motion only that Louisiana law applies to the

instant dispute. This conclusion, however, does *not* end the inquiry.[5]

B.  **Analysis of Motion**

Discovery seeks summary judgment on its cross-claim for defense and indemnity against Pogo Producing Company ("Pogo") on grounds the LOIA does not apply to the Discovery-Pogo contract because the contract does not "pertain to a well." Therefore, the sole dispute in the instant motion is whether the contract "pertains to a well." In *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985 (5th Cir. 1992) ("*Transco*"), the Fifth Circuit established a two-step process for determining the applicability of the LOIA. First, as a threshold matter, the contract must "pertain to a well." *Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 38 F.3d 193, 196 (5th Cir. 1994), *citing Transco*, 953 F.2d at 991. Second, "the contract must be related to the exploration, development, production or transportation of oil, gas or water." *Lloyds of London*, 38 F.3d at 196, *citing Transco*, 953 F.2d at 991. The court stated in *Transco*:

> If the contract does not pertain to a well, the inquiry ends. Only if we determine that the contract has the required nexus to a well may we proceed to the second step of the process, examination of the contract's involvement with "operations related to the exploration, development, production, or transportation of oil, gas, or water." Although the statute defines an "agreement" pertaining to a well as one concerning "operations related to the exploration, development, production, or transportation of oil, gas, or water," the only sensible interpretation of the statute, when read as a whole, requires that those operations themselves must, first and foremost, pertain to a well. Therefore, if (but only if) the agreement (1) pertains to a well *and* (2) is related to exploration, development, production, or transportation of oil, gas, or water, will the Act invalidate any indemnity provision contained in or collateral to that agreement.

*Transco*, 953 F.2d at 991 (footnote omitted).

---

[5] Additionally, this Court finds Pogo's argument concerning the second paragraph of Section 8.1 of the contract is similarly unpersuasive. The second paragraph merely contains the customary language used to prevent vitiation of an entire contract or contractual provisions when statutory, regulatory, or judicial limitations affect the validity or enforceability of the indemnification provisions. This Court concludes the language of this section does not stand for the proposition Pogo argues.

-8-

The determination of "whether a contract pertains to a well ... requires a fact intensive case-by-case analysis." *Transco*, 953 F.2d at 994. In *Lloyds of London*, the Fifth Circuit stated "[t]he [LOIA] is not applicable if the work required by the contract is performed on gas transmission equipment at a reasonably determinable point at which the gas can no longer be identified with a particular well, or is so fundamentally changed in processing, commingling, or preparing it for distribution to its ultimate end user, that the gas no longer 'pertains to a well.'" 38 F.3d at 186, *citing Transco*, 953 F.2d at 994. In *Transco*, the Fifth Circuit enunciated ten non-exclusive factors relevant to this determination.[6]

In the instant case, Discovery has presented evidence with respect to each of the ten factors. Chief among these factors is the fact that the Grand Isle 115 platform is not an active, producing well, but is a co-mingling station where the natural gas from three incoming pipelines is yet further co-mingled and pumped into one pipeline; no well that eventually feeds its production through the Grand Isle 115 platform is located closer than 5 miles from the platform; and the platform is "closely related to a pipeline," in that its sole purpose is to facilitate and further co-mingle the flow from smaller incoming pipelines to larger outgoing pipelines, with particular focus on the fact that there is no production coming from the Grand Isle 115 due to the fact that the platform has no active wells.

---

[6] The ten factors include: (1) whether the structures or facilities to which the contract applies or with which it is associated, e.g. production platforms, pipelines, junction platforms, etc., are part of an in-field gas gathering system; (2) what is the geographical location of the facility or system relative to the well or wells; (3) whether the structure in question is a pipeline or is closely involved with a pipeline; (4) if so, whether that line picks up gas from a single well or a single production platform or instead carries commingled gas originating from different wells or production facilities; (5) whether the pipeline is a main transmission or trunk line; (6) what is the location of the facility or structure relative to compressors, regulating stations, processing facilities or the like; (7) what is the purpose or function of the facility or structure in question; (8) what if any facilities or processes intervene between the wellhead and the structure or facility in question, e.g., "heater treaters," compressor facilities, separators, gauging installations, treatment plants, etc.; (9) who owns and operates the facility or structure in question, and who owns and operates the well or wells that produce the gas in question; and (10) and any number of other details affecting the functional and geographic nexus between "a well" and the structure or facility that is the object of the agreement under scrutiny. *Transco*, 953 F.2d at 994-95.

Pogo has not disputed any factor or put forth any evidence of its own in support of its argument, makings its argument that "there is a genuine issue of material fact concerning whether the [contract] pertains to a well," specious, at best.[7]

Rather, Pogo's chief argument in opposition is that where a contract pertains to the maintenance of employees essential to *production*, the LOIA applies to the contract. Pogo relies upon *Broussard v. Conoco, Inc.*, 959 F.2d 42 (5th Cir.), *reh'g and reh'g en banc denied*, 964 F.2d 1145 (5th Cir. 1992) in support of its argument. Additionally, in tandem with its argument based on *Broussard*, in its "Statement of Contested Material Facts," Pogo asserts "[Mr. Hughes's] services on the GI-115 were necessary to the GI-115 operations since Discovery and Pogo secured a contract for operations and maintenance of the GI-115 facilities," citing the Discovery-Pogo contract and the *Broussard* case.

This Court concludes the *Broussard* case is distinguishable from the facts of the instant case. In *Broussard*, the plaintiff was employed as a galley hand on a living quarters platform (containing no drilling or production facilities), which was located *adjacent to a production platform* on the Outer Continental Shelf off the Louisiana coast. 959 F.2d at 43. *Defendant Conoco owned and operated both platforms.* Conoco entered into a *contract under which a catering company, SHRM, provided catering services for Conoco's production employees while on the living quarters platform.* The contract also required SHRM to indemnify Conoco for any injury to an employee of SHRM regardless of Conoco's negligence or other fault. *Id.* at 45.

Broussard fell off a stool supplied by Conoco while changing linens on a sleeping bunk and

---

[7] Discovery's evidence is set forth in the unsworn declaration of Dale Fincher, a Discovery pipeline supervisor. This Court notes testimony by way of unsworn declaration is permissible pursuant to 28 U.S.C. §1746. Pogo has put forth no evidence or testimony of any nature -- sworn or unsworn -- in response to Discovery's evidence.

injured his back. Broussard sued Conoco, which joined SHRM pursuant to the indemnification agreement, and both SHRM and Conoco sought summary judgment on the issue of whether the LOIA voided the indemnification provision of the contract. The district court held in favor of SHRM, finding the LOIA applied, and precluded indemnification. Conoco appealed, and the Fifth Circuit affirmed, observing:

> The catering contract dealt with maintenance of facilities, i.e., employees and living quarters, *related to in-field production*. The quarters platform *was located adjacent to a production platform*, and *the employees worked on a production platform*. The purpose or function of the facilities covered by the contract *was to sustain manpower for production*. Conoco owns the quarters platform and the adjacent production platform. And additional "functional nexus" arises from the fact *that production employees are unquestionably necessary for production from a well*. The *Transco* factors that are relevant to this case argue for application of the OAIA.

*Id.* (emphasis added)

In the instant case, however, this Court observes Discovery has put forth evidence showing *the contract between Discovery and Pogo does **not** relate to in-field production*. Additionally, the living quarters platform in *Broussard* was located adjacent to an active production platform. In the instant case, *Discovery alleges the closest production platform to the platform in question was more than **five miles away***, and Pogo does not dispute this fact. Pogo puts forth **no evidence** *the employees located on the platform at issue in this matter worked anywhere other than the platform at issue*, nor has Pogo put forth any evidence the contract in question *was to sustain manpower for production*. Rather, the inference had from Discovery's evidence is to the contrary. Therefore, the facts of the *Broussard* case are distinguishable from the facts of the instant case.[8]

---

[8] This Court could envision a scenario in which Mr. Hughes might have performed work on an active production well that was geographically close to the Grand Isle 115 platform and yet was housed on the platform at issue. Under that circumstance, perhaps the analysis would be different and more akin to *Broussard*. However, Pogo has put forth no evidence Mr. Hughes worked on production platforms that were located in the vicinity of the Grand Isle 115 platform, and indeed, Discovery has put on evidence there were no active production wells within file miles of the Grand Isle 115 platform.

Pogo does argue, however, that there is a genuine issue of material fact as to whether "[Mr. Hughes's] services on the GI-115 were *necessary to the GI-115 operations* since Discovery and Pogo secured a contract for *operations and maintenance of the GI-115 facilities*." However, the Fifth Circuit has made clear "*[o]nly if we determine that the contract **has the required nexus to a well*** may we proceed to the second step of the process, *examination of the contract's involvement with "**operations** related to the exploration, development, production, or transportation of oil, gas, or water.*" *Transco*, 953 F.2d at 991. Hence, the Fifth Circuit has stated:

> Although the statute defines an "agreement" pertaining to a well as one concerning "***operations related to the exploration, development, production, or transportation of oil, gas, or water***," the only sensible interpretation of the statute, when read as a whole, ***requires that those operations themselves must, first and foremost, pertain to a well.*** Therefore, if (but only if) the agreement (1) *pertains to a well and (2) is related to exploration, development, production, or transportation of oil, gas, or water*, will the Act invalidate any indemnity provision contained in or collateral to that agreement.

*Transco*, 953 F.2d at 991 (emphasis added) (footnote omitted).

Here, Pogo contends Mr. Hughes's services on the platform "*were necessary to the platform operations*," but puts on no evidence with regard to the issue of whether the contract "*pertains to a well*." However, the jurisprudence is clear it is only *after* this Court determines the contract "*pertains to a **well***" that it should turn its attention to whether the agreement concerns "***operations related to the exploration, development, production, or transportation of oil, gas, or water.***" In essence, Pogo has put the cart before the horse.

This Court concludes Discovery has sustained its burden, as the movant, of demonstrating the absence of a genuine issue of material fact as to whether or not the Discovery-Pogo contract "pertains to a well." Once Discovery met its burden, the burden then shifted to Pogo to respond with specific facts showing there is a genuine issue of material fact as to whether or nor the contract

"pertains to a well." This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Yet, in response to Discovery's motion, Pogo has come forward with no evidence, and only the conclusory argument that "there is a genuine issue of material fact concerning whether the [contract] pertains to a well."

This Court concludes there is no factual controversy with respect to *material evidence*. The contract before this Court expressly obligates Pogo to defend and indemnify Discovery. Discovery has put forth evidence showing the Grand Isle 115 platform does not "pertain to a well," and Pogo has put forth no evidence contradicting this fact, but has relied solely on the *Broussard* case, which this Court finds to be factually distinguishable from the case at bar. Rather, Pogo skips directly to the "operations" inquiry, which this Court determines is an improper analysis pursuant to *Transco*. This Court concludes Pogo clearly has not met its burden on summary judgment to respond to movant's evidence and argument.

Additionally, considering the uncontroverted evidence presented by Discovery, this Court finds the work required by the Discovery-Pogo contract was to be performed on gas transmission equipment located "at a reasonably determinable point at which the gas can no longer be identified with a particular well, or is so fundamentally changed in processing, commingling, or preparing it for distribution to its ultimate end user, that the gas no longer 'pertains to a well.'"

Considering the foregoing,

IT IS ORDERED that Discovery's motion for summary judgment on its cross-claim for defense and indemnity against Pogo Producing Company ("Pogo") is GRANTED. Because Discovery has presented evidence which, on its face, would require defense and indemnity from

Pogo, and as Pogo has raised no other ground upon which the defense and indemnification provision of the Discovery-Pogo contract would be unenforceable, this Court concludes Pogo is required to defend and indemnify Discovery in the instant litigation.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 11 day of March, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE